Mr. Lindstrom. May it please the Court, Counsel. I'm Robert Lindstrom. I represent the appellate in this matter, West Central FS. This case began as a Chapter 12 bankruptcy, and on the petition date, my client was a fully secured creditor of the debtors. It held a junior lien on the debtors' equipment and crops. Early on in the case, the debtors proposed to sell... Before we get too far into a discussion, I need to raise the question about appellate jurisdiction. Your brief says that the notice of appeal is premature, but that the bankruptcy judge on remand from the district judge got everything settled. Is that entirely clear? Has the bankruptcy judge and the district judge now specified who gets all the money on the assumption of no marshaling? I believe they have. The bankruptcy judge obviously found in favor of me when I objected. I've looked at the order on remand, and it seems to not only assume that marshaling still applies, but it appears, at least to me, to leave about $23,000 unaccounted for. We don't know who gets it. That doesn't sound like a complete distribution order. I did not recognize that in your order. I confess I don't know the answer to that. It certainly would be a problem, would it not? Well, what I was looking for, obviously, was to protect my client. We were going to get the value of our collateral, and we weren't going to get our claim paid in full. But the question for appellate jurisdiction is not what happens to your client, but whether there is a complete distribution order. We appeal final decisions. We don't appeal issues in cases. Certainly. And, of course, that's a holding of Bullard against Blue Hills Bank, which I notice nobody has discussed. That's correct. Nobody has discussed that. That's a problem, I should think. So, may I move on? You can move on, but we may not be going anywhere. As you move on, I'd like to ask you this. The bankruptcy court, in its initial marshalling opinion, recognized that under Illinois law, marshalling was an either-or proposition, and that there's no provision for some sort of modified marshalling remedy in the name of equity. But isn't that exactly what it then did in its second marshalling decision? Didn't the grant of marshalling and the second opinion give to the senior lien holder all the benefits of the denial of marshalling, in that it didn't have to wait two years for the sale of that real estate, while giving to the junior creditor all the benefits it would have accrued had marshalling been granted in the first instance? Yes. But the bankruptcy court did. When we, early on, wanted to make sure we were advancing our marshalling rights, the court, I think there's certainly authority to support what the bankruptcy court did. But there was certainly reason that we felt it was appropriate at that time to raise our rights as soon as we could, and certainly the counsel, experienced counsel for the prior priority lien holder felt as well, and he and I negotiated a settlement agreement that would apportion those proceeds from the personal property sale. And we advanced that to the court, and the court could not approve it because debtors objected. Frankly, if they had not objected, they'd probably still be farming today. But the lease counsel felt that there was a possibility that marshalling would occur at that point, and the court could see also that this appeared to be a classic marshalling case at the outset, and that's why I believe the court ruled that if there was a change in circumstance, namely the sale of the farm real estate, he would revisit the issue again, and that's precisely what he did. And that's the reason. But in order to find that the four factors were established for marshalling, the bankruptcy court, it seems to me, had to piece together the first three factors as they existed in November of 2011 with the fourth factor as it existed in August of the next year of 2013. So was there any point in time that you can help me with that in which all four factors were met? And if not, how can we find that marshalling was appropriate? They were met on the petition date, which is what the bankruptcy court found in the second opinion when it granted my re-stated motion. It found that the reorganization of the process... Are you saying that they didn't have to cobble together these two disparate situations? Is that what you're saying? I'm sorry, I don't understand your question. The court's ruling was that the marshalling elements were all met on the petition date, and that's part of the dispute here, obviously, is when does the court view the marshalling rights being granted, and the bankruptcy court said it's the petition date, which is the date when my secured status was determined. And what Illinois case would you rely on for the proposition that these marshalling factors can be applied retroactively at a date earlier than the date of the actual completed sale? I don't think they were applied retroactively. I think the determining factor is... Look, the assets were sold in a normal marshalling situation. All the assets were collected and they were sold in stages. Some assets were sold once, the senior security interest gets all the money, and then remaining assets are sold later. What Illinois case says those two sequenced transactions can be put together and treated as if they are one? I'm not aware that there is one. Well, but your claim to marshalling is a state law claim. Don't you need some state authority? Well, we believe that in the context of bankruptcy, it's an ongoing... Forget context of bankruptcy. The Supreme Court says in Butler that state law applies unless some federal rule displaces it. There's no argument here that federal law displaces state law, so therefore we have a pure question of state law, and I'm trying to figure out what state law provides about the question I asked, about whether separate transactions can be put together and treated as if they were one. I am not aware of a specific case on retroactivity. Has the Illinois courts ever rejected such a theory before? I'm not aware they've done that either. I think this is a case of first impression. And it is an equitable doctrine. Yes, it is. I've got to say that what happened here looks an awful lot like alchemy in reverse. Gold was turned into lead for a secured creditor who was fully secured at the time of the petition, and in order to protect the interests of the debtors, collection, liquidation of the collateral that you had secured was delayed, and the result seems to have been to put an unsecured creditor in front of you. And that looks like alchemy in reverse to me. I think it clearly did. We were fully secured on the date of filing, and the IRS was not even a creditor. And so what people got from this at the end of the day was that the debtors had their opportunity to reorganize as subsequent to the entry of the initial opinion in order, and they eventually got their homestead exemptions. My client, if marshaling is applied, would be paid, as Your Honor indicated, as a fully secured creditor when the case was filed. The first lien holder would be paid in full. The trustees paid her fee for selling the real estate. So what the bankruptcy judge said initially was it looks like the elements for marshaling are here, but for the prejudice that would be suffered by the first lien holder, and the only reason that is is because they still have the real estate. If the real estate's sold, I'll revisit it because it looks like marshaling should appear. That's exactly what it did, and everybody knew that. Now, let me put it in the most simplistic term possible. In granting marshaling, didn't the bankruptcy court essentially collapse two distinct time periods separated by two years because the four factors weren't met in November of 2011 when marshaling was first denied because the fourth factor was not met in that it would not impose hardship on the senior lien holder. So, and the four factors were also not present in August of 2013 when marshaling was granted because there were no longer two or more funds that belonged to the debtor given that the crops and the equipment had been sold and paid out two years earlier. Where have I gone wrong? My time's up, so I'll try to briefly answer. The court, as I indicated, recognized in 2011 that the elements were present if the real estate were to be sold, and in the evolving process of a Chapter 12 bankruptcy, he felt that that should be reserved for future ruling if there was a change in circumstance, which he determined there was in 2013 with all the other elements being present. If he did not grant marshaling in 2013, then the result would be that my client, a fully secured creditor, would be trumped by a party that wasn't even a creditor when the case was filed, let alone an unsecured creditor. And bankruptcy is an equitable court. Certainly that isn't the type of rulings that we expect day-to-day in bankruptcy. Thank you. Thank you, Mr. Lindstrom. Mr. Erta. May it please the Court, Patrick Erta for the United States. Judge Easterbrook, I'd like to start off with the question of appellate jurisdiction. We believe that appellate jurisdiction was established under 157B2A and K because the disposition of the marshaling matter was a discreet civil- Well, unfortunately, it's just a discreet legal issue, and the Supreme Court held in Bullard against Blue Hills Bank that resolving one issue is not a final order. Your brief effectively supposes that Bullard had come out the other way, although I can say you did discuss Bullard. It's rather important. That's correct, Your Honor, and I apologize for that point. Quite frankly, based on 157B2A and K and in the bankruptcy context, we believe that that discreet civil proceeding going up and down- How can you make such an argument in light of Bullard? Agreed, Your Honor, that it appears that appellate jurisdiction may be lacking, and for that we apologize for that point. Turning to the- Do you- Your argument that an issue has been resolved seems to me very hard to reconcile with Bullard. It is not West Central's argument. West Central's argument is that on remand, the bankruptcy court set off everything and prescribed a complete distribution schedule, so it's now all over. Do you agree with that kind of argument? I don't believe that that kind of argument is correct and supported by the record because of the bankruptcy court's order at A93, and I also believe that- That seems to be a problem. It's clear to me that we need supplemental filings from the parties about appellate jurisdiction. We will invite parties to file briefs about appellate jurisdiction. They're due simultaneously within 14 days of today. They should be sure to cover both the consequences of Bullard against Blue Hills Bank and whether the bankruptcy judge and district judge together have now completely wrapped up a plan of distribution. Yes, Your Honor. Okay. Thank you, Your Honor. With that understanding, let's proceed to see whether there are-what the merits are to it. Okay. Is there-forgive me. That's okay. Is there any case-is there any case in this world that deals with this precise issue and particularly whether the marshaling factors can be revisited at a subsequent time but relating back to the original petition date? There hasn't been a case in Illinois dealing with this, Judge Rovner, and it makes sense because, quite frankly, marshaling is not a doctrine where you stitch together two different time periods. As you pointed out and as Judge Easterbrook pointed out, marshaling in Illinois requires four different things happening at the same time, and here- Well, so far as I can tell, the Illinois courts have not embraced the possibility of them happening at different times, but neither have they rejected it. They just haven't considered that possibility. What about the other 49 states? The other 49 states, as far as we could tell from our research, have not addressed this either or haven't been reflecting marshaling decisions. We've got an issue that in the history of this union has never been discussed by any state court. It seems pretty unlikely. It seems unlikely to me, too, and yet when I did the research, I could not find a case in the history of this union talking about this kind of odd issue. So that leaves us to- I want to share with you- But remember, it's an equitable doctrine that Illinois has actually specified different requirements for, and here, just as the Eighth Circuit said to St. Cloud, once that property was sold and the proceeds were distributed, it's no longer a part of the bankruptcy estate. The problem I have with your reliance on St. Cloud is there the junior secured creditor slept on his rights for two years. Here, in the November 2011 decision, the bankruptcy judge made very clear what he was doing and what he was reserving for future correction, if need be. And I've got to say, this kind of has the feel of no good deed going unpunished because of the loss of position for West Central. In order to give the debtors an opportunity to try to continue farming instead of liquidating the real estate. Well, I understand your point, Judge Hamilton, but I don't- First of all, I think that it's a question of jurisdiction and control. The Supreme Court in Lewis, way back in 1875, said that you need jurisdiction over both funds in order to have marshalling. Here, the bankruptcy court's order might have been intended for revisiting, but the fact is it no longer had prestigious control over those proceeds. So if you're the bankruptcy judge facing this situation in 2011, one choice is simply to force immediate liquidation, correct? Right. The kindly bankruptcy judge chose not to do that. In order to protect the interests of West Central, what should the bankruptcy judge have done? I think the bankruptcy judge should have actually kept those proceeds. If he had done that, then he would have been impairing the interests of the senior secured creditor, right? That's right, Your Honor. We're not allowed to do that in marshalling, are we? Well, and that's why Judge Provener is right, and the bankruptcy court was right the first time around when it said it's an either-or proposition. The error by the bankruptcy court here was it took some changed circumstances, namely the sale of the farm realty into account and others not into account. The bankruptcy court couldn't stick it together in that fashion. I'd also say that the- Okay, but back up. Because what you're- let's go back to the choice faced in November 2011. One option is to force liquidation. There are good reasons not to do that. You're saying the better approach in order to protect West Central and the debtor's right to go forward would have been to liquidate the crops and the equipment and hold on to the money, right? Right. But First Community, the senior secured lender, that's flatly contrary to marshalling doctrine, right? Well, and that's by marshalling. That is exactly what the bankruptcy court held, that marshalling was inappropriate. I would also note- So what should the court have done to protect West Central? Well, remember, West Central is a junior- You're not answering my question. I'm trying to, Judge Hamilton, and I'm sorry that I'm not getting to it more directly. I think that the protections of West Central always have to be considered in terms of its possibility as a junior creditor. So the answer is nothing, and let an unsecured creditor, the government, come in ahead of it. Is that right? Well, I would say that at the time that the government, at the time of the second marshalling order, the second marshalling request that was granted, at that point in time, West Central was an unsecured creditor because there was no property in which it had secured- Go back to November 2011. You're saying a fatal mistake was made, right? I was- By West Central. And what was it? I don't think that there was a fatal mistake, but the bankruptcy- You're saying they get screwed. I'm saying that the bankruptcy- They lose their security interest. Well, when the bankruptcy court decided to reject marshalling, that meant the proceeds left the state. At that point in time, they were no longer a secured party. And, yes, later on, when the case was converted to Chapter 7, the United States became a priority unsecured creditor rather than just an unsecured creditor like West Central. So what should West Central have done? Well, one of the things that West Central could have done was have more than just a junior secured lien on the crops proceeds. And this is all assuming that you can even get there because the strong-arm powers under 544A- Your argument on that seems to say that marshalling is just completely impossible. Well, no. Our argument on that boils down to when you have the hypothetical bona fide powers of real estate under 544A-3, so you're junior to the bank on the real property. And on this side, you have the junior lien creditor of West Central, which is junior to the bank on the equipment and crop proceeds. Marshalling should be at not allowed because in that case, you have two junior lenders. And either way you go with it, you're impairing someone's rights. That's all that means. Marshalling is not appropriate because of the power that Congress has given the trustee. Essentially what you're saying, I think, is that the trustee's power under 544A prohibits marshalling. No, it's close. But if it's a question where one of the assets is real property, I think at that point in time, yes. We have two different sources of assets. We have the real property and then we have the crops and the equipment. So if it were a case where it was just the trustee's power under 544A-1, they would be junior to West Central in the equipment and crops. But in 544A-3, because there's real property at issue, you look at whether marshalling could ever be done in that case. The trust couldn't have a marshalling that would impair the rights of West Central. And likewise, West Central can't order marshalling against the trustee that would impair its rights as a junior purchaser in the real property. So in this case, yes, I don't think that marshalling is appropriate. Thank you, Mr. Erba. Thank you. Ms. Morrow. May it please the Court, Your Honors and Counsel. I'm Carrie McGurl, and I represent the debtors in this matter. Could you please raise your voice? I'm sorry. Don't move the mic. Okay. Raise your voice. Just raise my voice. I apologize, Your Honor. As indicated in my brief, the Meyer Court clearly articulated the factors necessary for the application of the Doctrine of Marshalling. And the debtors agree with the United States and the trustee that those factors were not met at the time marshalling was ordered. And the Meyer Court further indicated marshalling is to be adopted only when it can be equitably fashioned as to all interested parties. In this situation, because of the large non-dischargeable debt, the debtors will retain if marshalling is allowed. They become interested parties. Unfortunately. But I had thought marshalling was intended to mainly worry about secured creditors, right? Yes, Your Honor. I believe it is. And the argument that you're making now seems to me to have terrible consequences for other farmers, because a future court facing this kind of a match-up of different security interests should force an immediate liquidation. Unfortunately, I would tend to agree with the United States that perhaps not forcing immediate liquidation but holding the funds would be a better option. I mean, you may say that, but First Community, the senior lender, would come screaming on appeal that this strategy is impairing its priority security, right? Yes, Your Honor. So that doesn't fit with existing doctrine. Your Honor, in this situation. It seems to me that the bankruptcy judge crafted a pretty good equitable solution here that gave your clients a chance to try to get their act back together, and I understand how difficult that turned out to be. But it's hard for me to see why that should come at the expense of West Central and to the benefit of the government. Your Honor, I see my time is out. Please go ahead and answer. Yes. Your Honor, unfortunately, West Central was in a better bargaining position when they entered the loan, when they made the loan. They took calculated risk to become a junior lien holder on only one type of property. Unfortunately, this time it did not pay off. That's the nature of business. So you think their mistake was not to get a second mortgage on the land?  Okay, thanks. Thank you. Thank you, counsel. Thank you. Ms. Reinbold. May it please the Court? My name is Gina Reinbold, and I am the Chapter 7 trustee in the below proceedings. Your Honor, this case presents an unusual situation in which the interest of the trustee, IRS, and the debtors align. I am here as the representative of the creditors of the bankruptcy estate of which the IRS is one. I am seeking to ask you about the – Let me ask you about what has now been resolved. What is your position on the question whether the bankruptcy judge and district judge have fully wrapped up a schedule of who gets what? I proposed a final report. I didn't ask what you proposed. I asked what had been done. The judge entered a final distribution order on my final report, which I believe finally exposes all the proceeds that are currently in the – I disagree with the lawyer for the tax division and agree with Mr. Lindstrom, although Mr. Lindstrom did not spell out his reason. We will look for more detail in the post-prerogative findings. Yes. I am here as the representative of all of the creditors of the bankruptcy estate, and I'm seeking to protect proceeds from the real estate which came into the estate after the conversion of the case to Chapter 7. The distribution of those proceeds, which will incidentally benefit the debtors since it will go towards payment of a non-dischargeable IRS debt, I should note that my post-distribution proposed to pay West Central as an unsecured creditor, and they would be receiving 10 or 11 percent in that distribution. The district court found that the elements of marshalling were not met when the bankruptcy court entered its order in the Chapter 7 case directed marshalling, and I would ask the court to affirm that result. There were significant post-petition changes in this case that weren't discovered in the bankruptcy court's crafting and granting of its marshalling order, which makes it inherently inequitable. If, on one hand, the bankruptcy court's rationale that petition date controls were to be accepted, the post-petition circumstances of the increase in each of the creditors' claims, including the senior lien holder and West Central, as well as the fact that property had been sold and the difficulty of getting that back and reducing claims to the amount of the petition date, as well as... What is there apart from just the increase in interest? Apart from the increase in interest, the collateral, the equipment, and crops were sold. Right. So they're not in the Chapter 7 estate. The government's telling us that's a jurisdictional argument, but I'm not sure how it's an equitable argument. Okay. Well, as Chapter 7 trustee, I don't have resort to the proceeds that were sold unless they're somehow brought back into the estate. No, they went to pay a fully secured creditor, so no, they're not coming back into the estate. Yes. So they're not part of the Chapter 7 estate. And then the 544A rights. And, Mr. Erda, Judge Hamilton, you passed it. Thank you, Ms. Reinhold. Anything further, Mr. Lindstrom? Counsel inferred here this morning, as did the district judge, that my client made a poor credit decision by not taking a lien on real estate. It's important to note that when this case was filed, my client was not only fully secured, it was oversecured on the collateral that was pledged to it. And to say that they made a credit decision by not taking a real estate mortgage is simply irrelevant. Its collateral was indeed sold, as the Bankruptcy Court stated. The money is fungible. And clearly, in the context of an evolving Chapter 12 reorganization, looking at the matters realistically, the monies that were left in the pool of the estate at the end of the day were there to cover the payment to my client that hopefully we'll receive someday. It's important to note that, as we've cited in our brief, the liens pass through bankruptcy unless they are released or avoided. There was no adversary filed by any of these parties avoiding the lien of my client. There was no confirmation order entered in the Chapter 12 case that avoided the lien of my client. So its lien continued to pass through bankruptcy. While there may have been an increase in the amount of the claims because of the two-year delay, there was also an increase in value of the real estate, and part of that was due to my client's actions. Thank you, Mr. Lindstrom. Thank you, Your Honor.